(91 South. 888)
### WHITE v. STATE.   (5 Div. 359.)

(Court of Appeals of Alabama. June 14, 1921. Rehearing Denied Oct. 4, 1921.)

**Intoxicating liquors** ⬦⟿236(19)—**Evidence sustained conviction of manufacturing.**

In a prosecution for manufacturing prohibited liquor, evidence *held* sufficient to sustain conviction.

Appeal from Circuit Court, Tallapoosa County; S. L. Brewer, Judge.

Word White was convicted of manufacturing prohibited liquor, and he appealed. Affirmed.

James W. Strother, of Dadeville, for appellant.

On rehearing counsel insists that under the opinion rendered in Milner v. State, ante, p. 157, 89 South. 306, the evidence could not

make out a case authorizing the conviction for the manufacture of prohibited liquors.

Harwell G. Davis, Atty. Gen., for the State.

Brief of counsel did not reach the Reporter.

BRICKEN, P. J. From a judgment of conviction for the offense of manufacturing spirituous liquors, this defendant appeals.

The only exception reserved to the ruling of the court upon the testimony is without merit.

While no brief has been filed in behalf of appellant, it is clear from the record that the paramount and in fact the only material question raised by this appeal is the sufficiency of the evidence to support the verdict of guilt returned by the jury. On the theory that the evidence was insufficient to support the verdict, the defendant requested the affirmative charge which the court refused.

Witnesses Robbins, Crowe, and Young, for the state, each testified that they went together to the house of the defendant on or about the 12th day of February, 1919, in search of a still; that the defendant was not at home, and as a result of the search they found in defendant's house some whisky jugs, and in his crib one keg. The jugs and keg all smelled like whisky, and the latter appeared as if it had just been emptied. They also found in the side room of defendant's house a funnel and measuring pot each of which contained a strong odor of whisky, and witness Crowe testified that there was a small quantity of whisky in the jugs. In searching the premises they found a wagon and mules tracks leading through and from defendant's lot down to a ditch, some 300 yards from defendant's house, where they found a place where fire had been built a considerable time, broken up boards, a lot of sticks, and much evidence of tracks and treading around this place. They also found a stone furnace there, described by them as being a great long stone furnace big enough for a still. They also found a still furnace, with thumper and condenser, and all indications were that a still had been operated at this place for a considerable length of time, and even within the last two days. But there was no still at this particular place at the time they reached there. The wagon and mules tracks, however, continued on by this place, and the officers above named followed these tracks still further for about 300 yards more, and there found the still all set up with about 125 gallons of beer in it, and each of these witnesses testified that this beer contained alcohol, one of them having so ascertained by tasting or drinking some of it. At the still they found several thumpers, flake, shovel, and a hoe or two, and a furnace dug out in the dirt. These witnesses

testified as to their experience and knowledge concerning matters of this kind, and stated that the beer and the other mentioned articles were all to be used in the manufacture of whisky and were suitable for that purpose. Witness Crowe testified there was alcohol in the still. This and other testimony of a similar nature was given in detail by the state's witnesses. After destroying the still, beer, and other appliances, they followed the wagon and mules tracks back to the house of the defendant, and the tracks of the mules were shown to be of medium size and shod all around. It was shown also that the two mules of defendant which were in the lot at that time were shod all around, and that their feet were of medium size. These witnesses further testify that later on that same day they saw the defendant, White, in conversation with a Mr. Meadows, and as they (officers) approached the defendant, and when he saw who it was, he ran away. He ran down through the trees, and two of them ran after him for a half mile or more trying to catch him, but failed to do so. There was no uncertainty whatever in the testimony of these witnesses in identifying the man who ran as being the defendant.

The above-stated facts and others of similar import were testified to by each of the witnesses for the state. The defendant denied all knowledge of or ownership in the still and appliances found and destroyed by the officers. He denied also that he ran away when the officers approached him, and said:

"I didn't run from the officers. I didn't run from anything. I weren't running. I didn't know that it was Mr. Young and Mr. Crowe and Mr. Robbins that came when I was talking to Mr. Meadows. I stopped there and talked to Mr. Meadows. I went across the woods there where I was putting in some turpentine boxes. I was cutting across walking. I wasn't running. I left the road; yes, sir; went across the woods."

There was no testimony offered and no attempt made by the defendant to explain about the whisky jugs, whisky keg, the funnel, and measuring pot found in his house, all smelling strongly of whisky, nor did he undertake to deny the existence of the small amount of whisky found in the jugs in his house, or explain where it came from or how it happened to be there.

It can thus be seen that the evidence was in sharp conflict, and was in our opinion sufficient to submit to the jury for its consideration in determining therefrom whether or not the defendant was guilty of the charge contained in the indictment. Summing it up, the testimony shows that in the defendant's house and crib were found evidence of contraband or spirituous liquor, in fact, whisky itself; tracks of the mules and wagon leading from defendant's lot to the old still place

and from thence on to the still itself; the return of those same tracks back to defendant's lot and the similarity of the mule tracks when compared with actual feet of the mules; the flight of the defendant upon the approach of the officers. These and other facts of like nature shown by this record preclude any sort of doubt as to the correctness of the ruling of the court in submitting this case to the jury.

The action of the court in refusing to grant a new trial is not presented in a manner authorizing a review of the ruling of the court on this question. Acts 1915, p. 722; Crawley v. State, 16 Ala. App. 545, 79 South. 804, and cases cited.

No error appearing in the record, the judgment of the circuit court is affirmed.

Affirmed.

## On Rehearing.

At the spring term, 1919, of the circuit court of Tallapoosa county this appellant was indicted for the offense of unlawfully manufacturing spirituous liquor since January 25, 1919. This indictment was filed in open court on March 28, 1919. At the fall term, 1920, of said court (September 27, 1920) he was put upon trial and was convicted as charged, and from this judgment he appealed to this court on October 2, 1920. The record was filed in this court on March 11, 1921, and on April 14, 1921, the cause was passed to the call of the Seventh division June 2, 1921, on which date a submission on briefs was had. On June 14, 1921, the decision of this court affirming the judgment of the lower court was rendered, and on June 27, 1921, an application for rehearing was filed by appellant. Simultaneous with the application for rehearing, the appellant filed a motion to recall the judgment of affirmance, set aside the submission of the cause, and grant a certiorari to complete the record by showing the action of the court below in sustaining demurrers to defendant's plea of autrefois acquit. The plea and demurrers are set out in the record. It appears to us that, if the ruling of the court upon the demurrers was thus obtained, it could avail the defendant nothing, as the demurrers were well taken, and, if sustained, there was no error in the ruling of the court in so doing. We are unwilling to further prolong this cause by doing a useless thing and the motion is therefore denied.

We adhere to the opinion and decision in this case. We think the defendant was accorded a fair and impartial trial, free from any error. The facts were for the determination of the jury and clearly sufficient to support the verdict.

Application for rehearing must therefore be overruled.

Motion denied, and application overruled.